JANUARY TERM, 1882, No. 38.

# Ulrich's Appeal.

1. Administrators, having an order from the Orphans' Court to sell the real estate of a decedent for the payment of his debts, are the proper parties to file a bill in equity against a third person in whose name the title stands, in order to compel him to make a conveyance to the purchaser.

2. That the heirs of the decedent are not joined as parties complainant is not ground for a demurrer to the bill.

3. Where a subsequent written settlement between the parties is inconsistent with the theory that certain moneys advanced are still due and unpaid, and there is verbal testimony that the parties had "settled," and since the settlement fourteen years have passed, a master's finding of fact that the moneys are still due may be overruled by the Court.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Appeal of Philip Ulrich from the decree of the Court of Common Pleas, No. 4, for *Philadelphia County,* sustaining exceptions to the report of a master.

January 8th, 1880, Margaret Barnholt and Jacob K. Long, administratrix and administrator of the goods, etc., of George Barnholt, deceased, filed a bill in equity against Philip Ulrich, setting forth that, about November 6th, 1865, George Barnholt, the decedent, purchased at a sheriff's sale certain real estate in Philadelphia; that the whole of the purchase-money was paid by Barnholt, but the title thereto was made to Philip Ulrich, the defendant, he agreeing to hold the same in trust for said Barnholt; that on March 4th, 1867, the defendant executed and delivered to Barnholt a paper in the following form:

"PHILADELPHIA, March 4th, 1867.

"*Know all men by these presents,* That I, Philip Ulrich, have this day sold to George Barnholt the twelve court houses situate on and in the rear of Linden Street, between Spring Garden and Green streets (called —— Avenue), and the three-story brick house and lot situate on the east side of Seventh Street, north of Poplar Street, and the frame building and lot on the west side of Marshall Street, above Poplar (bought by me at the sheriff's sale of the property of Matthias Smith), for the price or sum of nine thousand dollars, which he has paid to me in full, the receipt of which I do hereby acknowledge, and that I will make a deed or deeds, conveyance or conveyances to him, or to such person

[Ulrich's Appeal.]

or persons as he may direct therefor, at his own proper costs
and charges, subject to the mortgages now existing thereon.

"Witness my hand and seal this the day and year first
above written.

"PHILIP ULRICH.  [SEAL.]

"Witness present:
    "J. ALEX. SIMPSON."

That Barnholt died intestate May 10th, 1877, and letters
of administration on his estate were granted to the complain-
ants; that the Orphans' Court made an order of sale of the
said real estate for the payment of the debts of the decedent,
to which the administrators made return that they had ex-
posed the premises to sale and had received no bid, but that
subsequently Elizabeth, wife of John G. Drell, had offered
$1500 for one of them, and asking authority to accept said
offer upon the entry of security, which was duly entered;
that they prepared a deed to the purchaser, which the de-
fendant, upon request, refused to sign; that in consequence
of the delay the purchaser says she will not accept the title,
and great loss will be incurred by the estate of the decedent,
and that at no time since the date of the sheriff's deed to
him has the defendant ever claimed or exercised any power
or authority over said premises or any part thereof; that
the same were rented and the rents collected and repairs
paid for by decedent and his agent.

The bill prayed (1) that the defendant be ordered to unite
with complainants in a deed to make title; (2) to pay the
loss incurred; and (3) further relief.

The defendant demurred to the bill on the grounds that
(1) it did not appear that the plaintiffs, or either of them,
had any estate or interest; and (2) the bill showed title out
of the plaintiffs in the heirs of Barnholt.

The Court overruled the demurrer, and permitted the
record to be amended by making John G. Drell and Eliza-
beth his wife, in right of the wife, parties plaintiff.

The defendant then filed an answer, denying knowledge
of having executed the paper set out in the bill, and admit-
ting his refusal to execute the deed, and setting forth that,
April 9th, 1866, he advanced to Barnholt through his coun-
sel, J. Alexander Simpson, Esq., upon the security of the
said properties, the sum of $733.25, to be appropriated as
set out in the following receipt:

"Received, Philadelphia, April 9th, 1866, of Philip Ulrich,
the sum of seven hundred and thirty-three dollars and twenty-
five cents, to be applied as follows, to wit: Four hundred

and twenty-five dollars, and interest, to the payment of the *pro rata* part of a mortgage of fifty-five hundred dollars held by Virginia Earp, due from a lot on the west side of Marshall Street, north of Poplar, 12 feet in front, and 87 feet 6 inches in depth; two hundred and seventy dollars for the interest upon a certain mortgage of $3000, upon a messuage on the east side of Seventh Street, 316 feet 4½ inches north of Poplar Street, and extending through, eastward, to Marshall Street; and twenty-five dollars and fifty cents for the proportion of interest on $5500 mortgage paid by John Hibbett to Virginia Earp.

"$733.25.

(Signed)        "J. ALEXANDER SIMPSON."

That this sum of $733.25 had not been returned, but was legally due to him from Barnholt; that he was ready and willing to execute a deed whenever the said sum with interest was repaid; that Barnholt never demanded a conveyance, knowing that he was indebted in the above sum; and that "I admit that the said premises were rented by the said George Barnholt, and the repairs to the same, the water rents and taxes, paid for by him; but it is not true, as set out in the 11th paragraph of plaintiffs' said bill, that at no time since the date of the sheriff's deed to said George Barnholt have I ever claimed or exercised any power or authority over said premises; but, on the contrary thereof, I did, on one occasion, stop the payment of the rents to said George Barnholt until he had repaid to me a certain sum of money, to wit, the sum of $955, advanced by me to him over and above the said sum of $733.25, as set out in my answer in the 8th paragraph."

On the 25th of March, 1880, the Court made an interlocutory order, by agreement of counsel, that the defendant execute a deed "upon payment into Court of a sum of money sufficient to cover the claim of defendant, with interest thereon, and costs of suit, to wit, the sum of $1700, within five days from the date of this order, the payment of said sum of money being without prejudice to either party, and the cause to proceed to a final decree in relation thereto." The sum of $1700 was paid into court by the plaintiffs.

Before an examiner, appointed to take testimony, the receipt of April 9th, 1866, and the paper of March 4th, 1867, were offered in evidence.

*J. Alexander Simpson* testified for the complainants, *inter alia*, in regard to the paper of March 4th, 1867:

"Mr. Barnholt and Mr. Ulrich came to my office together the day this paper was drawn and dated. Mr. Barnholt said

to me, in the presence of Mr. Ulrich, that he had settled with Philip, and wanted me to draw a paper for Mr. Ulrich to sign, acknowledging that the properties bought at the sheriff's sale were his, Barnholt's. I knew that the principal part of the purchase-money had been paid by Mr. Barnholt previously. He paid to the sheriff all but the $850 I got from Mr. Ulrich. I then drew this paper, read it over to Mr. Ulrich, and he signed it in my presence."

*P. Ulrich*, the defendant, testified, *inter alia*, under objection:

"This paper I first saw on the day on which Mr. Grace and myself came to this office to see it, and then went to Mr. Simpson's office, and Mr. Simpson, Jr., showed it to me. It was about a week or ten days ago.

"Q. What is owing to you?
"A. $733.25."

March 25th, 1881, the case was referred to Charles Gibbons, Jr., as master, to report the facts and form of a decree.

The master reported, *inter alia*, the facts as follows:

"On the 9th day of April, 1866, Ulrich advanced to Barnholt the sum of $733.25, to be applied in and about the said real estate as set forth in the receipt for the same, and recited at large in the answer, and Ulrich continued to hold the title of the said property as security for the return of the money so advanced. On March 4th, 1867, the defendant Ulrich executed and delivered to George Barnholt the paper, which the master will call the declaration of trust, recited in the bill. No part of the $9000 was paid to Ulrich. . . .

"The said sum of $733.25 was not returned to the defendant, Ulrich, and is still due him. Ulrich always held the title to these properties, and the same stands in his name at the present time.

"During the life of George Barnholt no request was made of Ulrich to execute a conveyance, a period of nearly twelve years elapsing between the date of the sheriff's deed and the death of Barnholt, during which time there is evidence that Ulrich exercised control over the collection of the rents growing out of the said real estate. . . .

"In his finding of said facts, he did not consider the evidence of Philip Ulrich, the defendant."

The master further reported:

"In the first place this money was advanced to Barnholt for specific purposes, for the purposes contained in the receipt which was given Ulrich by Barnholt's attorney: Four hundred and twenty-five dollars thereof was intended for the payment of a part of a mortgage of $5500 on the Marshall Street property; two hundred and seventy-five dollars

for the payment of interest on a mortgage of $3000 on the Seventh Street property, and twenty-five dollars for the proportion of interest on the $5500 mortgage. This receipt most particularly sets forth the manner in which the money is to be applied. Ulrich advanced this money on the identical properties which he held, and for the purposes of meeting claims and demands against these properties. It is not contended that the advance took any other course than that specified in the receipt. If the money had been loaned to Barnholt for ordinary purposes simply, or, in other words, if it had been given for any other purpose than expenditure on these very properties, it might be argued to some effect that the defendant was not justified in refusing to sign the deed when presented; but, when we consider that in advancing this sum of $733.25, both Ulrich and Barnholt took the precaution to specify the mode of its application, by a receipt prepared by an attorney, we must presume that that receipt was intended for more than an ordinary acknowledgment of a simple debt.

"Holding the title, a sheriff's deed, holding a receipt for moneys advanced on account of said properties, controlling to a certain extent the collection of the rents therefrom, Ulrich must be considered in the light of a trustee, and, as such, has every right to be reimbursed for expenditures and advances (especially when made at the request of the *cestui que trust*), before a chancellor will direct him to convey. The position of the parties is not at all altered by the fact of a sum of money being paid into court sufficient to cover the debt due the defendant, and by the fact of the defendant having signed the deeds.

"The claim of the defendant is simply removed from the property to the fund. The principle that the master has applied to the conveyance of the real estate applies with equal force to the fund.

"Your master most respectfully submits the foregoing report, and suggests that the sum of $733.25, with interest from the ninth day of April, A. D. 1866, be awarded from the said fund to Philip Ulrich, the defendant; that the bill as filed by plaintiff be dismissed, and that the plaintiff pay the costs of these proceedings."

The complainants filed twelve exceptions to these findings.

The Court below, BRIGGS, J., sustained the exceptions, and ordered that the money in court be awarded to the plaintiff, and the costs be paid by the defendant, filing the following opinion:

"We do not think that the evidence in this case sustains the master's conclusions. The sealed declaration of the de-

fendant, of March 4th, 1867, made and delivered to the plaintiff's decedent eleven months after the receipt of Mr. Simpson, of April 9th, 1866, is utterly inconsistent with the theory that the moneys advanced, as set out in that receipt, were still due and unpaid. The defendant's declaration is in these words: [Reading it.]

" The language here employed admits of no ·doubt as to its meaning, and raises an express obligation on the defendant's part to convey the premises, subject only to the proper costs of conveyance and existing mortgages. The learned master, nevertheless, maintains that the premises are also subject to the advances mentioned in the receipt of Mr. Simpson, of April 9th, 1866. There is, however, no legal evidence (for the defendant is not a competent witness) to warrant this conclusion, and to support such a deduction, we must assume that a provision to secure those advances was omitted from the paper signed by the defendant, for some reason not defined. If the advances were, then, unextinguished, it were just as easy to say so as to charge the premises with the mortgage and cost of conveyance, as that paper was given but eleven months after the advances had been made, and while, it is fair to presume, the transactions were yet fresh in the memory of the parties.

" The more rational theory to be adduced from these documents alone is, that a settlement at the time of making the defendant's paper, or before, had taken place between them, and that the document was given to show precisely the conditions upon which the premises were then held by the defendant, and were to be conveyed at Barnholt's request. This view is supported by the additional testimony of Messrs. Simpson and Davis. The former testifies that Barnholt and Ulrich ' came to my office together the day this paper was drawn and dated. Mr. Barnholt said to me in the presence of Mr. Ulrich, that he had settled with Philip, and wanted me to draw a paper for Mr. Ulrich to sign, acknowledging that the properties bought at sheriff's sale were his, Barnholt's. . . . . . I then drew the paper, read it over to Mr. Ulrich, and he signed it in my presence.' Now, here we have them together at Mr. Simpson's office, stating that they had settled, and wished a paper drawn to show precisely what the settlement was.

"The paper is drawn accordingly. Under these circumstances, to allege that that document does not express the result of the settlement, and show the true relation between the parties as it then existed, is to assert that their going to Mr. Simpson's office, and what was there said and done, was an empty circuity and form, and was not intended to ex-

press the intention of the parties. In the absence of proof the law does not raise a presumption to support such a theory.

"If more were wanted, we have it in the fact that since the date of that settlement (March 4th, 1867) fourteen years have passed, and no effort has been made to obtain either the principal of the advances, or a cent's interest accruing thereupon. And during all these years, Barnholt to the time of his death, and the plaintiffs since, have received the rents issuing from the premises, and have paid the taxes and water-rent assessed thereupon, with the exception that upon one occasion the defendant stopped the rents until he was paid another sum of money which he had advanced to Barnholt. That being repaid, the rents were paid to the plaintiffs and their decedent, precisely as if the claim now set up had never existed. After this lapse of time, a presumption of payment arises, which is protected by the statute of limitations. And wherever that statute will bar in suits at law, it will, by analogy, be a like bar in proceedings in equity: Neely's Appeal, 4 Nor., 397; Hamilton v. Hamilton, 6 H., 20; Bickel's Appeal, 5 Nor., 204; Ashhurst's Appeal, 10 P. F. Smith, 290; Fricke v. Magee, 38 Leg. Intel., 139; Irwin v. Cooper, 11 Nor., 298. It follows, that neither equity nor sound reasoning will permit this long silence now to be broken.

"From the views already expressed, we are irresistibly led to a conclusion adverse to that reported by the learned master, and hence sustain the 3d, 10th, 11th, and 12th of the plaintiff's exceptions."

The defendant then appealed, assigning that the Court erred in sustaining the exceptions, in making its decree, in not ordering that the sum of $733.25 be paid to defendant, in overruling the demurrer to the bill, and in not dismissing the bill.

*Theodore F. Jenkins* and *A. Atwood Grace*, for the appellant.

The findings of fact by a master will only be set aside for plain error: Phillips's Appeal, 68 Penna. St., 130.

The fact that the money had been advanced and was not paid back was abundantly proved. The answer was directly responsive to the bill, and is evidence of the highest order: Pusey v. Wright, 7 Casey, 387; Paul v. Carver, 12 H., 207; Eberly v. Groff, 9 Harris, 251; Anton's Appeal, 16 P. F. Smith, 483.

The paper of March 4th, 1867, did not set out " precisely the conditions" upon which the premises were to be conveyed,

for the payment of $9000 was never asserted by any one. The position that the claim of Ulrich was barred by the statute of limitations is untenable, because Ulrich held a security: Romig *v.* Erdman, 5 Wh., 112; Krouse *v.* Beitel, 3 Rawle, 204; Baughman *v.* Dowler, 3 Yeates, 9; Altemus *v.* Elliott, 2 Barr, 62.

The bill should have been dismissed, because the heirs of Barnholt were not made parties: Anshutz's Appeal, 10 Casey, 375.

The heirs would have a right to pay the debts and so discharge the realty: Cassell *v.* Carroll, 11 Wharton, 104; Erb *v.* Erb, 9 W. & S., 147; Single's Appeal, 3 Brewster, 160.


*J. Alexander Simpson, Jr.,* for the appellees.

The answer as to new matter is not evidence: Torrey *v.* Burke, 38 Leg. Intel., 252. Only such parts are evidence as expressly deny the averments of the bill: Baker *v.* Williamson, 4 Barr, 463; Vollmer's Appeal, 61 Penna. St., 118.

The findings of the master are supported on no evidence: Milligan's Appeal, 10 W. N. C., 203; Phillips's Appeal, 18 P. F. Smith, 138.

The answer is not responsive to the bill on the point that the $733.25 had not been repaid.

In the proceeds of this sale the heirs have no interest. The heir does not appear as a party in the petition nor at any other time.


FEBRUARY 6TH, 1882.—PER CURIAM: The demurrer was rightly overruled. The administrators having an order to sell the real estate for the payment of debts were the proper parties. We are of opinion that, upon the evidence, the learned Court were right in overruling the report of the master, and that the appellant has no just ground to complain of the decree.

Decree affirmed and appeal dismissed at the costs of the appellant.